# THE STATE v. KENTNER, Appellant.

### Division Two, December 9, 1903.

1. **Keeping Place for Selling Options:** INFORMATION. An information charging one with keeping a place where stock and grain are bought and sold on margins, is sufficient if in the language of the statute.

2. ———: ———: INTENT. It is not necessary in such case that the intent of the defendant be alleged in the information.

3. ———: LOCATION. The evidence showed that the defendant who lived in a city had his office there connected by wire with one in the county where he was prosecuted, and there he had an agent, whom he paid a salary, and to whom he telephoned daily the prices of stocks, bonds and grains, and persons would come into this place and employ the agent to buy for them "margins" on the strength of such reports, and deposit with him the money for that purpose. There was no intention by the seller to deliver the article pretended to be purchased, nor did the buyer expect that. The money was put up on all deals of this kind, and the money deposited in that town to the credit of defendant. If the market value of the article went down, the purchaser lost his margin. *Held*, that the pretended purchases were made at defendant's place of business in the county in which he was prosecuted, and not in the city where defendant had his other office. *Held*, also, that these facts bring the case clearly within the provisions of the statute which denounces the keeping of places of business in this State wherein is conducted or permitted the pretended buying or selling of certain articles named therein, either on margins or otherwise, without any intention of receiving and paying for the property.

Appeal from Holt Circuit Court.—*Hon. Gallatin Craig, Judge.*

AFFIRMED.

*Crandall & Strop* and *John Kennish* for appellant.

(1)   The information is insufficient for the reason that it fails to charge the unlawful intent of the parties.

therein alleged to have been dealing on margins. Section 2339, R. S. 1899. "The indictment must set forth all the ingredients of the offense and charge the defendant directly and positively with the commission of it." Kelley's Criminal Law, p. 91; State v. Austin, 113 Mo. 538; State v. Kirby, 115 Mo. 440; State v. Basket, 52 Mo. App. 389. "When the intent with which an act is done is a necessary ingredient of the offense, it must be alleged." Kelley's Criminal Law, p. 100; State v. Burke, 151 Mo. 136. (2) The court erred in refusing the peremptory instruction asked by defendant at the close of plaintiff's case. According to the evidence of every witness, the sales and purchases, or pretended sales and purchases, were made in St. Joseph, Buchanan county, and not in Mound City, Holt county. The offense denounced by the statute is committed where such sales and purchases are made. Sec. 2339, R. S. 1899; State v. Gritzner, 134 Mo. 512; State v. Logan, 84 Mo. App. 584.

*Ivan Blair,* prosecuting attorney, for the State.

(1) The information is sufficient. It charges the offense prohibited by sec. 2339, in the exact language of said section. Sec. 2339, R. S. 1899. The information is identical in form, with the third count of the indictment in the case of State v. Logan, 84 Mo. App. 585, on which a conviction was sustained. (2) The court properly refused the peremptory instruction for defendant. There was ample evidence to support a verdict of guilty; such a verdict was rendered, and where there is any evidence from which a jury might reasonably have found their verdict, this court will not interfere. State v. Glahn, 97 Mo. 268; State v. Howell, 100 Mo. 628. (3) The law deems that a crime is committed where the criminal act takes effect. Hence, in many circumstances, one becomes liable to punishment in a particular jurisdiction while his personal presence is

elsewhere.   Even in this way, he may commit an offense against a State upon whose soil he never set his foot. Bishop on Crim. Proc. (Ed. 1880), sec. 53.   The rule in misdemeanors is that all who participate in them, whether present or absent, are indictable in the county in which they are committed.   Bishop on Crim. Proc., sec. 57; 1 Stark Crim. Pl. (2 Ed.), 28.   Witness Smith conducted this place as the agent of defendant, with his knowledge, and under his direction.   The defendant employed witness Smith to commit the crime charged, and aided him therein.   He is responsible for the criminal acts done by Smith under his direction.   State v. McClain, 92 Mo. App. 456; Hopson v. State, 42 S. E. 412; Schmidt v. State, 14 Mo. 137; State v. Hayes, 13 Mo. 248.   (4)   Even if deals made in defendant's place of business in Holt county were consummated in St. Joseph, the parties so dealing would be guilty of a violation of section 2337, and the offense in that case would be within the jurisdiction of the laws of this State, and the principle of the Gritzner case, 134 Mo. 512, would not apply.

BURGESS, J.—On the 11th day of April, 1902, the prosecuting attorney of Holt county filed with the clerk of the circuit court of said county an information against the defendant Kentner, which is as follows:

"Ivan Blair, prosecuting attorney in and for the county of Holt and State of Missouri, upon his oath of office, informs that the defendant, O. A. Kentner, on or about the 1st day of May, 1901, and on divers other days before and since said 1st day of May, at and in the county of Holt and State of Missouri, did then and there unlawfully keep and cause to be kept a certain office room and place, wherein he, the said O. A. Kentner, conducted and then and there permitted Steven T. Lucas, William S. Cannon, John Jourdan, John Trice, C. O. McIntyre, and divers other persons unknown, to engage in the pretended buying and selling of shares

of stock and bonds of certain corporations, the names of which, where organized, and by virtue of what laws are unknown and can not be given, and certain quantities of petroleum and provisions, to-wit, pork and lard, cotton, grain and agricultural products, to-wit, wheat, corn and oats, on margins so called, the said persons so pretending to sell the said commodities and pretending to offer the same for sale, not intending then and there to have the full amount of said property so sold or offered to be sold or any part thereof, on hand or under their control to deliver upon such sale, and the said parties so to buy said commodities, and pretending to offer to buy the same, not intending then and there to actually receive the same if purchased, or to deliver the same if sold; against the peace and dignity of the State.''

Thereafter at the April term, 1902, defendant filed motion to quash said information which is as follows:

''First.   Comes now defendant and prays the court to quash the information in this case, for the reason that the information filed does not state facts sufficient to charge the defendant with a crime under the laws of the State of Missouri.

''Second.   Because the act of the Legislature and laws upon which this prosecution is based is unconstitutional and void for the reason that it gives to the informer, or prosecuting attorney, one-fourth of the amount of fine imposed for this violation, and for that reason is in conflict with that provision of the Constitution of the State of Missouri which grants exclusive power to the Governor of the State to grant pardon and remit offense, etc.

''Third.   Because said information is so indefinite and uncertain that it does not inform the defendant of what offense he has to be tried, nor allege that he intended to commit any offense.''

This motion was overruled and defendant saved exceptions.

The defendant was then put upon his trial, found guilty, and his punishment fixed at a fine of five hundred dollars.   He appeals.

The facts briefly stated are, that the place for keeping which defendant was convicted was in the town of Mound City, in Holt county.   It was not contended that such place was kept or conducted by the defendant in person; nor that he was ever in Holt county or made any agreement therein, in connection with the keeping of such place.   As shown by the evidence, defendant was a resident of St. Joseph, Buchanan county, Missouri, and was engaged in business in said city of St. Joseph.   The theory of the prosecution is that the defendant was keeping the office or place charged in the information, through his agent, one W. Eben Smith, who was in the actual charge of such office or place. A written agreement offered in evidence by the State, was entered into by defendant and said Smith at St. Joseph, Buchanan county, Missouri, setting forth the terms and the purpose for which Smith was employed by the defendant.   According to this agreement and the evidence for the State, the defendant employed witness Smith, paying him seventy dollars per month, and furnished him the markets by telephone, free, at said Mound City.   And Smith agreed to send, and did send, orders for the purchase or sale of stocks, grain, etc., to the defendant at St. Joseph, and collected margins thereon at the time such orders were sent; such margins were deposited to the credit of the defendant in a bank at Mound City, after which Smith had no control over or interest in them.   In carrying on the business at Mound City, Smith rented a room and paid the rent therefor, owned all the furniture therein, and had broker's license and a city license from said city to transact such business in his own name, both of which were paid for by defendant.   The manner in which the business was conducted at Mound City was as follows: There was a telephone in the office, over which Smith re-

ceived from defendant at St. Joseph the market reports. These reports were placed upon a blackboard. Those desiring to buy or sell any commodity on which the market was given would direct Smith to telephone an order to buy or sell, as the case might be, at St. Joseph, Missouri. The name of the parties dealing were not telephoned by Smith, but each order was accompanied with a certain number. Sometimes the order would be accepted at St. Joseph, sometimes not. Whatever sales or purchases or pretended sales or purchases were made, were made and directed to be made in St. Joseph, Buchanan county, and not in Mound City, Holt county.

The business seems to have been conducted in the name of defendant, at which time he was also conducting the same kind of business in the city of St. Joseph, the two places being connected by wire, for the use of which he paid. Smith testified that he conducted the business at Mound City under the daily directions of the defendant, and that he was in conversation with him over the telephone many times daily.

The defendant also employed one Cannon to solicit business for the establishment in Mound City, paying him twenty-five dollars per month for his services. The evidence clearly showed that the business was carried on in violation of the statute.

The defendant insists that the court erred in overruling his motion to quash the information. The argument is that it is insufficient for the reason that it fails to charge the unlawful intent of the parties therein alleged to have been dealing on margins; that the part of the information in which such unlawful intention is attempted to be charged, fails to make any averment whatever or statement of any fact.

The statute upon which this prosecution is predicated (sec. 2339, R. S. 1899) provides that it shall be unlawful for any person to keep a place wherein is conducted the buying or selling of stocks, grain or other products, either on margins or otherwise, without any

intention of receiving and paying for the property so bought, or of delivering the property so sold; or wherein is conducted or permitted the buying or selling of such property on margins when the party selling or offering to sell does not have the full amount of property on hand to deliver upon such sale, or when the party buying or offering to buy does not intend actually to receive the same if purchased, or to deliver the same if sold.

The information is in the language of the statute, which is sufficient in all statutory offenses where all the facts which constituted the offense are set forth in the statute.    [State v. Davis, 70 Mo. 467; State v. Krueger, 134 Mo. 262.]    The offense charged is the keeping and causing to be kept a place wherein he, the defendant, conducted and permitted certain persons named, to engage in the pretended buying and selling of the shares of stock and bonds and certain agricultural products, not intending to receive the same if purchased, or to deliver the same if sold, and is not only in the language of the statute, but sets forth the names of certain persons who engaged therein in the pretended buying and selling of the shares of stock and bonds of certain corporations.

"On the general principles of common-law pleading, it may be said that it is sufficient to frame the indictment in the words of the statute, in all cases when the statute so far individuates the offense that the offender has proper notice, from the mere adoption of statutory terms, what the offense he is to be tried for really is.    But in no other case is it sufficient to follow the words of the statute.    It is no more allowable, under a statutory charge, to put the defendant on trial without specification of the offense, than it would be under a common-law charge."    [Wharton's Cr. Pl. and Prac. (9 Ed.), sec. 220.]

It was not necessary that the intent of the defend-

ant be alleged in the information, as that is not an ingredient of the offense.

He was clearly informed by the information of the nature and character of the offense alleged against him, and could successfully plead his acquittal or conviction in bar to another prosecution for the same offense. The business was all transacted at Mound City in Holt county. None of the articles pretended to be sold were intended to be delivered, hence, there was nothing further to be done than was done to complete the transactions.

At the close of the State's case defendant asked an instruction in the nature of a demurrer to the evidence, which was refused, and he excepted. The action of the court in this regard is assigned for error, defendant insisting that the evidence showed the sales and purchases were made in St. Joseph, Buchanan county, and not in Mound City, Holt county. The manner in which the business was conducted was, for a person who desired to buy any of the articles mentioned in the information, to go into the defendant's place of business in Mound City, and employ Smith as his agent to buy for him some article, at the same time depositing with him a certain amount of money with which to make the purchase, or rather the "margin," as there was no intention by the seller to deliver the article pretended to be purchased, nor did the buyer expect it. Nor were they ever delivered. "If the market value of the article went down the purchaser lost his margin."

Smith received the market from Kentner over the telephone and when received he would call it, and if it was corn the buyer would ask what corn was worth. Smith would then inquire of Kentner, who would tell him, and then he would inform the buyer; then the latter would say "Buy 10,000 bushels," or one thousand, or any amount he wanted, and Smith would tell Kentner to buy whatever amount he said. Margins were put up on all deals, and when the money was paid

it was deposited in the Mound City bank to the credit of Kentner.

It would, therefore, seem that the pretended purchases were made at defendant's place of business in Mound City. There is no question of delivery in this case, and the facts disclosed by the record bring it clearly within the provisions of the statute which denounces the keeping of offices and places of business in this State wherein is conducted or permitted the pretended buying or selling of certain articles named therein, either on margins or otherwise, without any intention of receiving and paying for the property. If the property was to be delivered the transactions would not of course come under the bans of the statute.

The defendant was a party to the opening up of the room or place of business, and knew the object and purpose. Indeed, he hired Smith at a stipulated salary per month to conduct the business for him and directed by telephone all of its transactions, and received all moneys paid to Smith as his agent, on margins. He also employed one Cannon to whom he paid twenty-five dollars per month for soliciting business for the place, and it is idle to say that he did not know that the stocks or property bought were not intended to be delivered to the purchaser or intended to be received by him, but that all of the transactions which took place were deals in options. The instructions given were upon this theory of the case, and presented it very fairly to the jury. There was therefore no error committed in refusing instructions asked by defendant.

The constitutional question raised in the trial court is without merit, and, in fact, is not insisted upon in this court.

Finding no reversible error in the record, the judgment is affirmed.

All concur.