## THE STATE v. LOME HAMMONS, Appellant.

**Division Two, March 15, 1910.**

1. **BURGLARY: Recent Possession.** A presumption of guilt is not to be indulged because a piece of cloth from the burglarized store was found in an open woods, not the property or in the possession of defendant and not under his control in any way, and at a distance of 400 yards from his residence. That is no such exclusive possession as raises the presumption of guilt.

2. —————: **No Evidence.** Because of the insufficiency of the evidence, the verdict in this case cannot be permitted to stand, and the defendant is discharged.

3. —————: **Insufficient Information: Ownership of Building.** An information which does not charge the ownership of the burglarized store in some person capable of owning the same, will not support a conviction. Where it charges that defendant "did break and enter into a store house belonging to the estate of J. W. Johnson, deceased," it does not charge ownership in any person, and is insufficient.

Appeal from Douglas Circuit Court.—*Hon. John T. Moore*, Judge.

Reversed.

*G. W. Thornberry* and *A. H. Buchanan* for appellant.

Ownership of the property on a charge of burglary and larceny must be alleged and proved. In this case the information charged the ownership to be in the estate of J. W. Johnson, deceased. That ownership cannot be charged in this way seems too clear to admit of argument, and while we have not been able to find a case decided by this court where ownership had been laid as in this one, we have found many cases where we think the doctrine is clearly announced

that this information is bad and should have been quashed or the judgment arrested. And we find abundant authority elsewhere, where the question has been directly before the courts as here presented, and they uniformly hold that to charge ownership in the estate of a deceased person is fatal. Constitution, art. 2, sec. 22; State v. Ellis, 119 Mo. 437; State v. Davis, 138 Mo. 107; State v. Jones, 168 Mo. 398; State v. Horned, 178 Mo. 59; State v. James, 194 Mo. 268; State v. Kelley, 206 Mo. 685; 2 Bishop's New Crim. Proc., secs. 139 and 725; 22 Cyc., 353; People v. Hall, 19 Cal. 425; Beall v. State, 53 Ala. 460. There is not one particle of evidence upon which to base a conviction, and this court will discharge the defendant when there is a failure of evidence. State v. Nesenheuer, 164 Mo. 461; State v. Crabtree, 170 Mo. 642; State v. Morney, 196 Mo. 43; State v. Gordon, 199 Mo. 561.

*Elliott W. Major,* Attorney-General, and *John M. Dawson,* Assistant Attorney-General, for the State.

The information is valid, sufficient and properly charges the offense in the language of the statute. The building was alleged to belong to the estate of J. W. Johnson, deceased. This allegation designating the ownership, was sufficient. "In burglary, ownership means any possession which is rightful against the burglar." State v. McGuire, 193 Mo. 226; 2 Bishop's New Crim. Proc., sec. 137; Henderson's Case, 98 Va. 794; State v. Frank, 64 Ia. 42; R. S. 1899, sec. 1886; Hale's P. C., 552; Chitty on Criminal Law. It is true, the common law requires that the indictment for burglary must lay with precision the ownership of the house in which the offense has been committed, and the proof must conform to the averment. Beall v. State, 53 Ala. 461; 2 Lead. C. R. Cases, 53; 2 Bishop's Crim. Proc., secs. 135-6-7-8; 2 Wharton's Am. Crim. Law, sec. 1555; 1 Russ. Crimes, 806. But it has been held in this State that the gist of the offense of burg-

lary consists in the breaking and entering the house with the intent to steal. State v. Hutchinson, 111 Mo. 357; State v. Tyrrell, 98 Mo. 354. In the latter case it is held by the court that although the ownership of the property be laid in a certain person, it is immaterial that upon the trial the property is shown to belong to another. "Ownership," says Bishop in his work on Criminal Procedure (vol. 2, secs. 137, 138), "is one thing in one offense and another thing in another. In burglary ownership means any possession which is rightful as against the burglar." And he cites in support of his text, State v. Gilligan, 50 Atl. 844, and Trice v. State, 116 Ga. 602. In Pennsylvania it was held that "ownership" means title to property. Hill v. Cumberland Co., 59 Pa. St. 474; R. S. 1899, sec. 2534; State v. Rand, 33 N. H. 216; Commonwealth v. Hamilton, 15 Gray 480; R. S. 1899, sec. 2908.

GANTT, P. J.—On the 25th of September, 1908, the prosecuting attorney of Douglas county, began this prosecution by information, charging the defendant with burglary and larceny in having broken into, in the nighttime, and stolen from the storehouse belonging to the estate of J. W. Johnson, deceased, located in the town of Gardner, in Douglas county, on the night of the 10th of August, 1908, about ten dollars lawful money of the United States belonging to the postoffice at Gardner, and between five and ten dollars in money and some other personal property belonging to the estate of J. W. Johnson, deceased. The defendant was arrested and on the 31st of March, 1909, filed his motion to quash said information on the ground that same did not state any offense against the laws of the State of Missouri, nor designate the ownership of the building alleged to have been burglarized, nor the goods and wares taken therefrom, nor who was the owner of or in possession of said storehouse, or the said goods and wares, and because the information did not

advise the defendant of the nature and cause of the accusation against him. This motion to quash was overruled and the defendant duly excepted at the time. Thereafter he entered his plea of not guilty and at the same term of court was put upon his trial for burglary and larceny and convicted of burglary alone and his punishment assessed at three years in the penitentiary.

It appears from the evidence that the storehouse and postoffice building in which the alleged burglary was committed had formerly belonged to a man by the name of J. W. Johnson, who had died November 25, 1907, and that the burglary occurred on the night of August 10, 1908. The postoffice at Gardner was kept in this store building. There were a number of articles, including a lot of shoes, some razors, pocket-knives, cloth and twenty-five or thirty dollars in money, the latter consisting largely of quarters, dimes, nickels, and pennies, stolen and taken away. Defendant was at the store the day before the burglary and traded two chickens for some soap, soda, tobacco and cartridges. He lived about four miles from the store. On this occasion Miss Oma Johnson, a daughter of the deceased merchant, waited on him, and they agreed entirely as to the character of his purchases, except she did not remember that he bought a nickel's worth of cartridges, number 38, but on the preliminary trial she testified that she would not swear that he did not buy the cartridges. Defendant had traded at this store for four or five years, and always paid his bills there, as well as at other stores in the neighborhood. In payment for his purchases on this occasion he tendered Miss Johnson a ten-dollar bill, and she gave him back change to the amount of $9.80, after crediting him with the value of his two chickens. It seems that on Thursday after this burglary on Monday night, one Henry Strong, who had been called in by the constable to assist in searching for the stolen goods, found a piece of cloth, which was identified as a part of the stock

of the Johnson store, in an open woods, some two hundred and fifty to four hundred yards distant from the defendant's house and on land owned by the grandfather of the defendant. The land on which the cloth was found was not in the possession of the defendant and was not inclosed but lay along the public highway. Having found this piece of cloth, the constable obtained a search warrant and searched the defendant's house on Thursday morning after the burglary on Monday night. No property of any kind was found hidden or smuggled about the premises or answering to the description of the stolen goods. The searching officer found some money in a cloth sack or poke, consisting of a five-dollar bill, nine silver dollars, four half dollars, five quarters, nine dimes and thirty-eight nickels. As the search warrant did not call for the bill, or the silver dollars, the justice required the constable to return the five-dollar bill and six of the silver dollars to the defendant. The other money was on hand at the time of the trial in the possession of the constable. The constable also found five number 38 cartridges lying in an open plate in an open cupboard in the defendant's house.

There was a mass of immaterial evidence injected into the case as to the defendant's ownership of money about that time, and it was developed that in June the defendant had sold a cow for eighteen dollars, and some weeks earlier a calf for six dollars, and that he usually paid for his groceries with his poultry and eggs. It was also shown that he traded in furs and pelts. It would serve no good purpose to repeat this great mass of unsatisfactory testimony.

At the close of the testimony the defendant requested the court to instruct the jury to acquit him, which the court refused.

The court instructed the jury that: "if they find from the evidence that the defendant, in the county of Douglas and State of Missouri, on or about the 10th

of August, 1908, did willfully and unlawfully break into and enter a certain storehouse there situate and that the said storehouse was at the time in the possession of the widow and heirs of J. W. Johnson, deceased, and took, stole and carried away the property, etc., they would find him guilty and assess his punishment.  The jury found the defendant guilty of burglary alone, and after unsuccessful motions for new trial and in arrest of judgment, he was sentenced.

I.  The crucial question in this case is whether there was any substantial evidence upon which to submit the guilt or innocence of the defendant to the jury.

The defendant was a young married man and lived with his wife and two small children about four miles from the town of Gardner, in Douglas county. On the night of the 10th of August, 1908, the store in which the postoffice was kept in Gardner was burglarized, and some goods and wares therein and the moneys belonging to the store and to the postoffice were stolen.  After the burglary, a searching party, it would seem, found a piece of cloth in the neighborhood where the defendant lived, in a hollow log about four hundred yards from the defendant's house.  This log was out in the open woods, and not within any inclosure over which the defendant had any authority, or of which he was in any way in possession.  This piece of cloth was found on Thursday after the burglary on Monday.  With no other evidence tending to show the defendant guilty, a search warrant was issued and by virtue thereof the constable of that township searched the defendant's house, which was a one-room log cabin 14 by 16 feet.  In an open cupboard in a little cloth poke he found about twenty dollars, some of it in dimes and nickels, and five number 38 pistol cartridges.  The money consisted of a five-dollar bill,

nine silver dollars, four half dollars, and five quarters, nine dimes and thirty-eight nickles. This money was taken by the constable, but under the direction of the justice he returned the five-dollar bill and six of the silver dollars to the defendant, as this money was not of the description in the search warrant. There was not the slightest attempt to identify any part of the money, which the constable retained up to the time of the trial in the circuit court, as any part of the money that was taken from the burglarized store. Out of a whole box of cartridges and some extra ones, alleged to have been taken by the burglar, none of them were found in the defendant's house, unless it could be said that the five cartridges which lay in an open plate in the open cupboard were part of them. As to these cartridges the evidence was on the part of the defendant that he had bought them from the daughter of the deceased merchant, who once owned the store, on the day before the burglary, and she testified that while she did not remember that she had sold him these cartridges, she might have done so. The other evidence by which it was attempted to connect the defendant with this crime was the fact that he had in his possession a knife with a gap in it, and in the woods where the piece of cloth was found in a hollow log there was a stick found which had been cut with a knife with a gap in it. But numerous witnesses testified that they lived in the neighborhood and had knives with gaps in them. The defendant established by unimpeached evidence that during the spring and summer, he had sold a cow for eighteen dollars and a calf for six dollars, and had been trading in furs and pelts, and it was shown by the State's own witnesses that on the day before the burglary he had presented a ten-dollar bill to the young lady in charge of the store in payment for goods, and that she had given him back change to the amount of $9.80.

Under this state of the evidence can it be possible that a man should be adjudged guilty of burglary and larceny and incarcerated in the penitentiary? We think there is absolutely no evidence of a substantial character connecting the defendant with the alleged burglary of the store.

In State v. Belcher, 136 Mo. l. c. 137, it was said by this court: "The recent possession of stolen property raises presumption of guilt, but what constitutes recent possession which will justify this instruction is a preliminary question for the court. It is the settled law of this court that to raise this presumption the stolen goods must be found *in the exclusive possession* of the prisoner. [State v. Castor, 93 Mo. 242; State v. Warford, 106 Mo. 55; State v. Scott, 109 Mo. 226; State v. Owsley, 111 Mo. 450.]" In the Belcher case, as in this, the larger part of the goods were found in the possession of another, and the remainder in the home of the defendant's mother, and there was no evidence to indicate that the defendant had any other possession than that shared by the family in common, save and except as to a pair of overalls and a pair of shoes, and it was a question whether these were a part of the stolen goods, and it was held not to be *exclusive* or recent enough to justify this instruction. The doctrine announced in that case was followed in State v. Drew, 179 Mo. 315.

It is obvious in this case, we think, that unless a presumption of guilt is indulged because the piece of cloth was found out in the woods, not the property, or in the possession of the defendant and not under his control in any way, and at a distance of four hundred yards from the residence of the defendant, then there is absolutely nothing upon which to hinge the guilt of this defendant of this alleged burglary. It goes without saying that the mere possession by the defendant of something less than twenty dollars, when he was shown to have sold property exceeding that amount

and was an industrious trader in furs and pelts and was in the habit of paying for his merchandise as he purchased it, cannot be made a basis of any presumption of guilt in this case. As already said there was not the slightest evidence tending to identify the moneys found in his possession with the moneys stolen from the burglarized store. The circuit court should have directed a verdict of acquittal at the close of the State's case, and if not then, certainly at the close of the whole evidence, for the reason that it did not connect the defendant with the alleged crime.

II.    But there is another ground upon which this judgment must be reversed, and that is that the information did not charge the ownership of the burglarized store in any person capable of owning the same. The information charged "that the defendant did break and enter into a storehouse belonging to the *estate* of J. W. Johnson, deceased."

In Beall v. The State, 53 Ala. 460, the indictment was for burglary and alleged a breaking and entry "of the dwelling-house of the late John Tate, said house now, and at the time of the offense committed, belonging to the estate of the late John Tate." Said the court: "The common law requires that an indictment for burglary must lay with precision the ownership of the house in which the offense has been committed, and the proof must conform to the averment. [2 L. Cr. Cases, 53; 2 Bishop, Cr. Pr., secs. 135, 136, 137 and 138; 2 Wharton, Cr. L., sec. 1555 *et seq.*; 1 Russ., Crimes, 806.] The statutes have not abrogated or modified this rule. . . . That which is intended as an averment of ownership shows on its face that the ownership is not disclosed. If the person described as John Tate is dead, and that is the intendment, and during life was the owner of the dwelling, on his death it devolved on his personal representatives, heirs or devisees. Who these are is not averred." The court

quoted with approval from Pleasant v. The State, 17 Ala. 190, these words: "The accused is therefore alleged to be the property of one not in life. This cannot be, for the dead can own no property. Death strips us of all rights and title to property, and casts them on the living, who alone can own property."

In People v. Hall, 19 Cal. 425, the court said: "The indictment charges the property as that of an estate. This is insufficient. The charge should be of altering the brand of the animal as that of a particular individual, or that the owner of the animal was unknown." See also 22 Cyc., 354.

This has been the uniform ruling of this court. [State v. Ellis, 119 Mo. l. c. 438; State v. Jones, 168 Mo. 398; State v. Horned, 178 Mo. 59.] It follows that this information was insufficient to sustain the sentence, even had the proof been sufficient to connect the defendant with the crime. But the evidence fell short of connecting the defendant with the crime, and the judgment of the circuit court is therefore reversed and the defendant discharged. *Burgess* and *Fox, JJ.,* concur.