STATE OF MISSOURI, Respondent, v. WILLIAM E. LUNDRY and CECIL LUNDRY, Appellants, No. 41905—233 S. W. (2d) 734.

Division One, November 13, 1950.

*Chas. B. Butler* for appellants.

*J. E. Taylor*, Attorney General, and *William A. Wear*, Assistant Attorney General, for respondent.

[735] HYDE, J.—Defendants were convicted of cutting trees on University of Missouri land in violation of Section 4541, R. S. 1939, Mo. R. S. A., and sentenced to six months in the county jail. They have appealed from this judgment and contend that the Court erred in refusing to quash the information, in refusing to direct a verdict and in admitting certain record evidence.

Section 4541 is as follows: "Any person who shall go upon any lands belonging to this state or the United States, saline, seminary, school or swamp lands belonging to any county, or lands belonging to any corporation, person or persons, and shall unlawfully cut down or destroy, or cause to be cut down or destroyed, any tree or trees two inches in diameter or more standing or growing thereon,

or any person who shall induce, assist, aid or abet any other person so to do, shall be deemed guilty of a felony, and shall, upon conviction, be punished by imprisonment in the state penitentiary for a period of not more than five years, or by imprisonment in the county jail for a period of not less than three months, or by fine not less than three hundred dollars."

Defendants filed a motion to quash the amended information on which the case was tried, on the ground that the affidavit in the magistrate's court charged them with cutting "divers red oak and white oak trees", on the land of the University of Missouri, while the amended information charged them with cutting fifty black oak trees on the land of the State of Missouri; and alleged they had not been accorded a preliminary examination on the charge in the amended information. This affidavit is not in the record and the allegations about it in the motion to quash did not prove themselves. However, the first information filed apparently did so state because there is an order in the record authorizing its amendment by striking out the words "divers red oak and white" and inserting "fifty black"; and also by striking out the words "University of Missouri" and inserting "Board of Curators of University of Missouri." This was again later amended to "lands belonging to the State of Missouri held for the use and benefit of the Board of Curators of the University of Missouri." We will, therefore, consider the effect and propriety of these amendments.

We do not think these amendments amount to making a different charge as defendants contend; but on the contrary they are within the statutes of jeofails. (Sec's. 3898 and 3952, R. S. 1939, Mo. R. S. A.) The gist of the offense here is going upon the land of another and cutting down trees two inches or more in diameter. Thus it is an offense under this statute to cut trees of any kind. (There was evidence that black oak is the broader term and includes red oak.) We overruled a similar contention in State v. Hudson, 314 Mo. 599, 285 S. W. 733, a case of leaving the scene of an accident after injury to property, where it was contended that it was necessary to specifically describe the injured property. We held: [736] "Where property, or the ownership of property, is merely incidental and not an essential element of the crime which is charged in the information, it is not necessary to allege with particularity the ownership or description of the property." Here it is the ownership and description of the land rather than the description of the trees that is the important matter; and that distinguishes this case from State v. Ellis, 119 Mo. 437, 24 S. W. 1017; and State v. Hammons, 226 Mo. 604, 126 S. W. 422, cited by defendants. Likewise, as hereinafter shown, the University of Missouri was the beneficiary of the Congressional Grant of this land and the State by Section 10833, R. S. 1939, Mo. R. S. A. has authorized its sale by deed of conveyance

"executed by the president of the board of curators, signed by him, with the seal of the corporation attached thereto, and attested by the secretary of the board." Thus, while the legal title was held by the State, the University not only was the beneficial owner, but had power to sell and convey the land for the State, so that this amendment did not charge a different offense. A similar situation was early ruled under the jeofails statute in State v. Mohr, 68 Mo. 303 in which the charge was embezzlement from a copartnership. The name of the partnership was stated in the indictment but not the names of the partners who were, of course, the actual owners of the embezzled money. This Court recognized that "the common law rule which required the individual names of partners to be set out when property of the partnership was alleged to have been stolen." However, we said: "We think the rule has been modified by Wag. Stat., Sec. 27, p. 1090, (now 3952) which declares that 'no indictment * * * shall be deemed invalid for any defect or imperfection which does not tend to the prejudice of the substantial rights of defendant upon the merits.' We cannot perceive how the omission to state the names of the individual members of the firm of Wm. C. Wilson & Bros. could have affected the substantial rights of defendant upon the merits." We believe that is true of the amendments in this case and that they could not have prejudiced the substantial rights of these defendants upon the merits. We, therefore, hold that these amendments were proper.

Defendants make the further contention, which was also stated in their motion to quash, that they were charged with two separate offenses in the single count of the indictment. They say the statute forbids one to cut down or destroy trees in the disjunctive; and that the information herein, in the conjunctive, charged in the language of the statute, that defendants "did then and there unlawfully, willfully, knowingly and feloniously cut down and destroy certain trees standing and growing thereon." They cite State v. Shaw, 26 Mo. App. 383; State v. Fuser, 75 Mo. App. 263; State v. Kentner, 178 Mo. 487, 77 S. W. 522; and State v. Mitnick, 339 Mo. 127, 96 S. W. (2d) 43. The two latter cases hold that an offense must be sufficiently specified, by statement of facts, so that the defendant has proper notice of what charge is made against him and that it is not always sufficient to follow only the words of the statute. However, they also recognize that it is sufficient to charge "statutory offenses in substantially the language of the statutes creating them, when the statute in question sets forth the constituent elements of the offense"; and that "it is sufficient to frame the indictment in the words of the statute, in all cases when the statute so far individuates the offense that the offender has proper notice, from the mere adoption of statutory terms, what the offense he is to be tried for really is." We think that is true of Section 4541.

Furthermore, "if a statute makes criminal the doing of this, or that, mentioning several things disjunctively, there is but one offense, which may be committed in different ways; and in most instances all may be charged in a single count. But the conjunctive 'and' must ordinarily in the indictment take the place of 'or' in the statute, else it will be ill as being uncertain." (State v. Flynn, 258 Mo. 211, 167 S. W. 516.) As the Flynn case holds, this rule is limited in its application to averments which are not repugnant to, but [737] perfectly consistent with each other. We think that is true of the allegations in this case. (See also State v. Fitzsimmons, 30 Mo. 236; State v. McCollum, 44 Mo. 343; State v. Murphy, 47 Mo. 274; State v. Coffee, 225 Mo. App. 373, 35 S. W. (2d) 969 and cases cited; State v. Craft (Mo. Sup.) 23 S. W. (2d) 183.) Certainly the allegations in this information are not inconsistent because it was possible to do both; and the evidence here was sufficient to show that defendants did both cut down and destroy trees growing on this land. We, therefore, hold that the motion to quash was properly overruled.

It is also contended that the Court should have directed a verdict for defendants. Defendants apparently base this on their claim of failure to prove ownership of the land. The State's evidence showed that on August 10, 1949, the Sheriff of Ripley County, Missouri, Jim Featherston, and J. M. Nichols, Forester of University of Missouri lands, went out to Section 31, Township 22, Range 1 West and found about fifty trees that had been cut down. The leaves on these trees were wilted but not dried up; "they wouldn't crumble in the hand." Shortly after their arrival, they heard a tree fall and immediately went in that direction. They found a truck in which they saw a thermos of hot coffee and lunches. They heard axes and then heard a saw; and, soon after hearing the tree fall, and after continuing to walk in that direction, they came upon the two defendants cutting up a fallen tree. It had a stump of about fourteen inches and was identified as a member of the black oak group. The other cut trees ranged in size from twelve to sixteen inches in diameter. They watched defendants saw off two tie cuts before they made their presence known. The sawdust was fresh, the stump was wet from sap, the leaves were green, and were not wilted. Defendants told them that they had cut all of the trees; that they knew it was agricultural college land; that they had no permission to cut the trees; and that they "never asked." Defendants also told them they had hauled out some timber and had taken it to Tucker where their cousin had a sawmill.

The west line of Section 31 is the county line between Ripley and Oregon Counties. The State had a survey made to determine the location of the trees that were cut. The surveyor found them to be on both sides of the line between the Northwest Quarter and

the Southwest Quarter of the Section. He said he started on the county line at that quarter section corner, which he located by going north from an iron pin established as a corner on the county line, and surveyed east to where the trees had been cut. Mr. Nichols, the forester, also identified the location from a topographical map. Our conclusion is that the evidence of these witnesses was sufficient to show the location of the trees cut and to establish the corpus delicti. However, defendants contend that the ownership of the land could only be established by a patent from the United States and that the Court erred in permitting the State to introduce in evidence Exhibits A and B, being certified copies of records in the office of the Secretary of State of Missouri, showing that the State had selected certain lands under the Congressional Land Grant Act, for the purpose of proving title to Section 31, Township 22 North, Range 1 West, in Ripley County, Missouri; citing Stephenson v. Stephenson, 71 Mo. 127; Hammond v. Johnston 93 Mo. 198, l. c. 220, 6 S. W. 83; and Hamilton v. Badgett, 293 Mo. 324, 240 S. W. 214.

This land came to the State by the Act of Congress of July 2, 1862 (12 Stat. 503, Chap. 130) amended by Act of March 3, 1883, (22 Stat. 484, Chap. 102), now U. S. Code Title 7, Sec's. 301-308. The proceeds of such land, or land scrip in lieu of land, was required to be invested in a perpetual fund for the endowment, support and maintenance of at least one college which would teach military tactics and branches of learning related to agriculture and mechanic arts. The Act authorized the State to select from public lands within the State the quantity to which the State was entitled. By Act of the General Assembly (Laws 1866, p. 91) the Governor was authorized to appoint agents to select [738] the land for the State and "to make return to the Register's office descriptive lists of the lands selected." By an Act in 1870 (Laws 1870, p. 15) an Agricultural College was established as a Department of the University of Missouri and the Curators were authorized to appoint a Commissioner to keep complete lists of the lands selected under the Acts of Congress and to lease said lands; and the provision herein above referred to for sale and conveyance of the land by the Curators was a part of this Act. (See also Laws 1871, p. 39.) Exhibit A is a copy of a report made January 1, 1867, certified by the present Secretary of State, showing lands selected and located for the benefit of the Agricultural College, including Section 31, Township 22, Range 1 West in Ripley County. Exhibit B was a copy of The Certificate of Grant, certified by a previous Secretary of State and recorded in the Deed Records of Ripley County, showing descriptions (including Section 31) from the Record of Agricultural Selections approved under the Act of Congress of July 2, 1862.

The cases cited by defendants involve swamp land, regulated by a different Act of Congress, land granted in aid of a railroad, and

land claimed under a New Madrid earthquake certificate in lieu of land included in a Spanish Grant previously confirmed by an Act of Congress. They are not in point here. The Land Grant Act of 1862 was a direct grant to the States and provided the procedure to be followed by the States to select the land to which they were entitled. The General Assembly acted in accordance with this procedure and the exhibits, to which defendants object, show the land which the State took under this Act. Title vested in the State upon the selection and listing of the land. (McNee v. Donahue, 142 U. S. 587, 12 S. Ct. 211, 35 L. Ed. 1122.) We hold that these exhibits were properly admitted and were sufficient proof of ownership; and that the State's evidence made a jury case.

The judgment is affirmed. All concur.