141 So.2d 761 (1962)
ROSALIE B. LOVEY AND JAMES RUSSELL THOMPSON, APPELLANTS,
v.
ESCAMBIA COUNTY, FLORIDA, A BODY POLITIC AND CORPORATE, AND SOUTHERN BELL TELEPHONE AND TELEGRAPH COMPANY, A CORPORATION, APPELLEES.
No. D-150.
District Court of Appeal of Florida, First District.
June 5, 1962.
*762 Coe & Coe, Pensacola, for appellants.
Watson & Watson, and Jack H. Greenhut, Pensacola, for appellees.
WIGGINTON, Judge.
Plaintiffs have appealed from an adverse final decree denying their prayer for both a prohibitory and mandatory injunction against defendants. It is contended that the chancellor applied incorrect principles of law to the undisputed facts in arriving at the conclusion that the equities of the cause were with the defendants and plaintiffs were not entitled to the relief prayed.
This action involves the legality of an easement for a public road across a certain described parcel of land in Escambia County. The disputed road had existed in its present location for many years prior to the filing of this action. It appears on an official map of the county made in 1941, and is clearly revealed by aerial photographs made in 1951 and 1958. It provides access from a state highway to a community known as Weekly Bayou, and has been used by the public generally and by residents of the community which it serves.
The parcel of land across which the road is located was acquired by the federal government for military purposes in 1942, and was a part of a military reservation used by the federal government until the latter returned it to private ownership by conveyance to plaintiffs' predecessor in title on February 13, 1956. The federal government permitted the road to be used by the general public during its period of ownership in the same manner as it was used prior to government acquisition. In its quitclaim deed to plaintiffs' predecessor in title in 1956, the government specified that the conveyance was made subject to all existing easements and rights of way for roads, highways and public utilities. In acquiring title to the land in question plaintiffs' predecessor knew or was charged with constructive knowledge as to the existence of the road and its use by the general public. Plaintiffs occupy no better position than their predecessor.
In 1953 while the parcel of land was in government ownership defendant County reconstructed the road and thereafter continuously maintained it uninterruptedly to the date on which this action was commenced in November, 1960. It is here noted that the first three years during which the County was engaged in the reconstruction and maintenance of the road occurred while title to the land on which it is located was owned by the federal government. The last three and a fraction years of county maintenance occurred after title to the land had been returned to private ownership. *763 It is clear from the record, however, that the total period of time during which the County engaged in a program of reconstruction and maintenance of the road extended over a period of more than four years.
The chancellor found from the evidence although the road was in existence and used by the general public for many years prior to any action by the County, that the County nevertheless constructed and maintained the road for a period of more than four years within the meaning of F.S. Section 337.31, F.S.A. Appellants do not question this finding, and it is our view that it accords with a proper interpretation of the statute as construed by the Supreme Court in the Pasco County case.[1]
The section of the statute on which the chancellor relied in rendering the decree appealed provides that "whenever any road constructed by any of the several counties * * * shall have been maintained, kept in repair or worked continuously and uninterruptedly for a period of four years by any county, * * * such road shall be deemed to be dedicated to the public to the extent in width which has been actually worked for the period aforesaid, whether the same has ever been formally established as a public highway or not. Such dedication shall be conclusively presumed to vest in the particular county in which the road is located * * * all right, title, easement and appurtenances therein and thereto, whether there be any record of conveyance, dedication or appropriation to the public use or not."[2]
Because of the County's continuous and uninterrupted construction and maintenance of the road in question for a period of more than four years, the chancellor concluded that under the provisions of the foregoing statute there exists a conclusive presumption that an easement for road purposes had been dedicated by the former owners to the public. Having arrived at this conclusion, the chancellor denied plaintiffs' prayer for an injunction restraining the County and the general public from allegedly trespassing on plaintiffs' land and mandatorily requiring the County to close the road and return the right of way to its former condition.
It is appellants' principal position that the court erred in concluding that the statute which creates a conclusive presumption of dedication was applicable to the period of time when title to the land on which the road is located was vested in the federal government. They rely upon the long established and well recognized principle of law that one acquires no right by adverse possession or prescription in lands owned by the government.[3] This principle is grounded on the premise that government's title to land may not be divested by hostile or adverse user. Since no rights in government owned land may be acquired by adverse user, the statutory time for perfecting title by such means never comes into being so long as title is in public ownership.[4] Appellants reason that if the period of time during which the County's activities occurred while the land was owned by the federal government is excluded, the proof establishes that four years of construction and maintenance by the County did not occur between the dates on which the land was reconveyed to private ownership and this action was filed.
If the premise on which the appellants' position is based is sound, the conclusion for which they contend would logically follow. There is a basic reason why this contention must be rejected. Both prescription and adverse possession are founded upon open, notorious, continuous, hostile and adverse use and occupancy of land *764 owned by another.[5] If the chancellor had found that the County's title to a road easement was predicated either upon adverse possession or prescription, appellants contention would have to be sustained. In the decree appealed, however, the chancellor specifically found that the County's easement in the disputed road was not based upon adverse user under the law of prescription, but accrued by virtue of a presumed dedication under the terms and provisions of the statute hereinabove mentioned. If the chancellor's conclusion is correct, it would follow that the principle of law on which appellants rely, and the authorities cited in support thereof, would be wholly inapplicable and have no bearing upon the decision. This is so for the reason that the acquisition of a road easement by dedication is not dependent upon adverse and hostile user as defined in the law of prescription and adverse possession. On the contrary, title by dedication presupposes a use consistent with the dedicator's interest not one adverse or hostile to it.
Reverting to the statute under consideration it seems clear to us that the continuous and uninterrupted construction and maintenance of a public road by a county for a period of four years gives rise to a conclusive presumption that the owner of the land on which the road is located has dedicated the same to the public for road purposes. The estate or title presumed to have been dedicated is that of an easement in the road right of way. The validity of the easement so dedicated is not dependent upon any record of conveyance, dedication or appropriation to public use. The statute under consideration is not one of prescription or adverse possession. Its purpose is to operate as a statute of repose with respect to the rights of way of roads or portions thereof that have been constructed by roadbuilding authorities of the several counties of the state under circumstances of irregularity in the acquirement of title to the rights of way wherever existing roads have been constructed and are being used.[6] Although a statute of repose may be technically distinguished from a statute of limitation, the ultimate effect of each is the same. Their purpose is to place in repose the assertion of rights to which one is entitled unless such rights are enforced within the time limited by the statute.[7] The general rule that both the United States and a state are immune from the operation of a statute of limitations is applicable where the state or government is the real party in interest. The right to assert sovereign immunity from the operation of the statute of limitations does not extend, however, to its assignee or transferee where the suit is brought for the private benefit, and to enforce the rights of a private person.[8] As said by the Supreme Court of Arkansas in the Brookfield case: "Some of the explanations which have been given for the doctrine that the statute of limitations does not run against the sovereign are stated in 37 C.J. p. 711. It is said that the sovereign ought not to be injured by the neglect of its officers; or, that the sovereign's time and attention are occupied by the cares of government and it must not be held to be negligent in its delay. It is also said that the sovereign will not be presumed to advance any unjust or oppressive claim. Even if the plaintiff could be regarded as a transferee or assignee of the sovereign's rights (which it is not), still none of the reasons for the sovereign's immunity from limitations would apply. Plaintiff seeks to enforce rights which it holds purely for its private benefit. The sovereign has no further interest. When these taxes were paid all of the sovereign's interest ceased, just as the *765 sovereign's interest in land ceases when the sovereign conveys the land. Limitation will not operate to deprive the sovereign of title to land but it will operate against its grantee who holds the land in a purely private capacity."[9]
The distinction must be borne in mind between the right of a sovereign to interpose its immunity against the operation and effect of a statute of limitations asserted against it, and the right of a sovereign to plead the statute of limitations as a defense to a suit brought against it. In case of the former the sovereign's right to assert its immunity exists so long as it is the owner of the property which forms the subject matter of the action against which the statute is pleaded as a defense. This immunity may not be transferred to or exercised by the government's grantee or successor in interest. In the case where the sovereign has a right to plead the statute of limitations in defense of an action against it, such right inures to the benefit of its grantee or successor in interest and may be asserted with the same effect as could the sovereign had it continued as the principal party in interest. Since the real parties plaintiff in this case are individuals and not the federal government, they are not entitled to assert sovereign immunity against the operation and effect of the statute on which the chancellor relied in rendering his decree in this case.
It is equally established in this state that an act of dedication is usually affirmative in nature and need not be done by formal act but may be done by parol, may result from the conduct of the owner or may be manifested by written grant, affirmative acts or the permissive conduct of the dedicator.[10]
The record before us reveals without dispute that the County commenced the reconstruction and maintenance of the road in question in 1953 when the land on which the road is located was owned by the federal government. The United States was as equally capable of making a formal dedication of an easement for road purposes as was any individual. It is seen from the authorities cited above that such dedication could have been effectuated by the execution of a formal document, or by permissive conduct and acquiescence of the government. The record reveals that the road in question continued to be used by the public after the federal government acquired the property in 1942. The government acquiesced in the continuous and uninterrupted use of the road during the entire period of its ownership. In its quitclaim deed returning the land to private ownership in 1956, the government specified that its conveyance was subject to all existing easements and rights of way for roads, highways and public utilities. This exception not only recognized the right theretofore enjoyed by the public to use the road, but recognized any rights which the County may have acquired under the statute when it commenced in 1953 a program of reconstruction and maintenance of the road for public use.
Appellants strenuously contend that the exception in the government's deed to plaintiffs' predecessor in title applied only to easements and rights of way which had matured as a legal interest in the land prior to the date of conveyance. They reason that since the statute was ineffectual to vest any rights in the county so long as the government owned the land, the public road easements and rights of way excepted in the government's deed had not ripened into legal title and therefore did not come within the exception stated in the deed. While this argument may have merit as applied to easements as a species of property, it loses its validity when applied to the term "rights *766 of way". The term "right of way" has been construed to mean not only a right of passage over the land of another, but is also used to describe the strip of land on which an existing road is located. It does not necessarily mean a legal and enforceable incorporeal right such as an easement.[11] Thus in Kotick v. Durrant the Supreme Court said: "Failure to describe the boundary of a right of way in granting an easement does not render the grant void."[12] Since the government's deed specifically excepted existing easements, the additional exception of existing rights of way for roads must be construed as having reference to those strips of land on which existing roads were located at the time of the conveyance. It therefore follows that the road right of way here involved was in existence and use at the time the government divested itself of title to the land, and clearly came within the exception specified in the deed which conveyed the land to plaintiffs' predecessor in title.
We have not overlooked the decision rendered by the Supreme Court in the Palm Beach County case.[13] That action involved a controversy between Palm Beach County, a governmental entity, and the South Florida Conservancy District, which was a governmental agency under the laws of this state. The county sought to maintain its right to an easement for road purposes acquired by it under the then existing statute similar to the one now considered in this case. The road easement claimed by the county was located on top of a levee constructed and maintained by the Conservancy District, which levee was used in connection with drainage and reclamation. It was there contended that the statute which vested in the county an easement under the theory of presumed dedication had no application when sought to be applied against lands owned by another governmental body. This theory was rejected by the Supreme Court whose decision specifically held that the county had an initial right to at least conditionally appropriate and use the levee for county road purposes so long as it was not needed for the purpose of drainage and reclamation by the Conservancy District which was charged under the law with the responsibility of constructing and maintaining drainage structures along the canal. That dispute was simply one where the county's right under the circumstances of its appropriation and use of part of a canal right of way and levee was required to yield to the paramount purpose of drainage and reclamation when the two claims came into irreconcilable conflict. The facts in that case are distinguished from those in this case since it affirmatively appears that the public use of the road over the parcel of land owned by the federal government did not interfere with the latter's utilization of its property for military purposes. There is no basis in this record to conclude that the County's use of the right of way for road purposes was in irreconcilable conflict with the government's use of the remainder of the land as a part of its military reservation. The government could have closed the road at the time it acquired the land in 1942, or at any time thereafter during its period of ownership. It likewise could have prevented the County from reconstructing the road in 1953 and from thereafter maintaining it as a road for use of the general public. Since the government did not avail itself of the rights which it possessed to prevent further use of the road by the public, it must be assumed that such use of the land owned by the government was consistent not only with its wishes, but with its best interest. The government's continued acquiescence in the use of its property as a public road, and the county's activities *767 in constructing and maintaining it, are consistent with the statutory presumption of dedication and with an intent to except the road right of way from the land conveyed by the government to plaintiffs' predecessor in title. For this reason the holding enunciated in the Palm Beach County decision has no application to the case now reviewed.
For the reasons stated above we conclude that the chancellor correctly interpreted the statute under consideration, and applied it properly to the facts in this case. The decree is accordingly affirmed.
Affirmed.
CARROLL, DONALD, C.J., and WIGGINTON, J., concur.
STURGIS, J., dissents.
STURGIS, Judge (dissenting).
Implicit in the affirmance of this appeal are several revolutionary concepts of law with which I cannot agree. In order to accurately state my views, I deem it necessary to relate the pleadings and facts in more detail than shows by the main opinion.
The plaintiffs (appellants) brought this suit in equity to enjoin Escambia County and Southern Bell Telephone & Telegraph Company from maintaining a public road and telephone lines across plaintiffs' jointly owned 120-acre parcel of unimproved land.
The county's answer to the complaint denied the alleged trespass and affirmatively asserted that it was entitled to maintain a public road across plaintiff's lands, not stating its width or location, on the premise (1) that the road had been constructed and maintained prior to plaintiffs' acquisition of the property, (2) that prior to purchase plaintiffs had actual knowledge of the road, and (3) that on December 29, 1959, the Board of County Commissioners of Escambia County adopted the following resolution:
"WHEREAS, there presently exists a road traversing Lots Six and Seven, Section 8, Township 3 South, Range 32 West, Escambia County, Florida, which road is presently being used by the general public although said road is over and across private property and said road has had certain work and labor performed upon the same by Escambia County, and
"WHEREAS, the owners of said property have objected to the continued maintenance of said road by Escambia County as the County might acquire title to said road through maintenance, and
"WHEREAS, Mrs. Maurice Finman [now Rosalie B. Lovey] and Russell Thompson [the plaintiffs], the owners of said property have agreed with Escambia County to the continued maintenance of said road, upon certain conditions
"UPON MOTION by Commissioner Jones and seconded by Commissioner Cobb the following resolution was duly adopted:
"BE IT RESOLVED by the Board of County Commissioners of Escambia County that the road presently existing over and across the above described property shall be continued to be maintained by Escambia County as a permissive casement; that it is further agreed that the said road will be closed at any time upon request of the owners furnishing a specific right of way to traverse said property." (Emphasis supplied.)
The answer of Southern Bell Telephone & Telegraph Company denied the alleged trespass and asserted a right to maintain its telephone lines "along the right of way of said road" by "leave and license" of Escambia County.
Escambia County also filed a counterclaim alleging, in substance, that when this suit was instituted there was a public road *768 traversing plaintiffs' property; that said road has been constructed, maintained, opened and improved by the county and used by the general public for a period in excess of 6 years; that the county during said period entered upon said land and constructed thereon a road right of way; that the work consisted of grading, filling the ruts, clearing the brush, and preparing and constructing the said road in a proper condition for the use of the traveling public; and that such road has been continuously maintained and kept in repair by the county and used by the traveling public for a period in excess of 6 years. The counterclaimant further alleged that plaintiffs took title through a deed containing the following provision:
"Subject, however, to all existing easements and rights of way for roads, highways, railroad, pipelines and public utilities including, but not limited to, that certain easement and right of way conveyed by the United States of America to the County of Escambia, State of Florida by deed, dated August 17, 1956 and recorded in page 417 of Book 449 of the records in the office of the Clerk of the Circuit Court of Escambia County, Florida."
On the basis of said bare allegations, the defendant-counterclaimant prayed that "the aforesaid road be declared dedicated for the use of the defendant and the general public as a public road with title thereto vested in the defendant-counterclaimant." Plaintiffs' answer to the counterclaim denied all allegations except that the deed contained the quoted provision. While the sufficiency of the answers and counterclaim was not tested by appropriate motions, it is elemental that their function is limited to the development of such lawful issues as are well pleaded.
Upon final hearing the chancellor entered the decree appealed, dismissing the complaint and decreeing, on the basis of the county's counterclaim, that the road in suit is deemed to have been dedicated to the public pursuant to the provisions of Section 337.31(1), Florida Statutes 1959, F.S.A. The decision of the chancellor is bottomed on a finding, inter alia, that "the road was constructed and maintained continuously and uninterruptedly by Defendant Escambia County from 1953 for a period of more than 4 years."
The detailed findings of fact will be separately discussed.
Finding No. 1
"(1) On December 13, 1956 Plaintiffs' predecessor in title, Maurice M. Finman, acquired title from the Federal Government to a tract of land containing approximately 120 acres in section 8, Township 3 South, Range 32 West, better known as Bauer Field. The deed from the Government (Plaintiffs' Ex. 3) is expressly subject `to all existing easements and rights of way for roads, * * * including, but not limited to, that certain easement and right of way conveyed by the United States of America to the County of Escambia, by deed, dated August 17, 1956, and recorded at page 417 of Book No. 449 of the records * * * of Escambia County, Florida.' The right of way set forth in Book 449 at page 417 is not involved in this suit because the road does not fall within its description." (Emphasis supplied.)
This, as well as the other findings, fails to note the important fact that the federal government acquired "absolute and unqualified fee simple title" to the subject land pursuant to judgment in eminent domain entered June 2, 1942. It is quite true that on August 17, 1956, the United States conveyed to Escambia County a specific road right of way across plaintiffs' land and that same does not fall within the description of the disputed road right of way. I suggest, however, that it is proper to take that formal easement into account in determining whether the federal government "acquiesced"  using that term in the sense employed *769 by the majority opinion  to the establishment on its property of the road in dispute. That easement for a road right of way is 36 feet in width and abuts the east and north boundaries of plaintiffs' land, and it is uncontradicted that at one time this route provided access to the Weekly Bayou community, the service of which provides the reason or excuse for the subjection of plaintiffs' property to the road in dispute which at its furthermost point lies less than one fourth of a mile from the specifically conveyed right of way. It is unreasonable to suppose that the federal government gave the 1956 specific easement to Escambia County as an unsolicited act of kindness. That action is incompatible with the theory of dedication by acquiescence on the part of the federal government of any rights to the road in dispute, and is altogether compatible to the premise, acknowledged by the county's above quoted resolution, that it had not acquired a superior right to plaintiffs in the property traversed by the road in dispute. Moreover, I completely reject the notion that the sovereign can be divested of any property right as a result of acquiescence by its officers, servants, or agents to a trespass committed upon its property.
The decree appealed and the decision of the majority confers upon the word "existing", as used in the habendum clause of the deed by which the federal government divested title, a strained meaning, contrary to the context in which it is used and to the commonly accepted definition of the word in legal as well as lay parlance. "Exist" means to live, to have life or animation; to be or continue to be, in fact; have actual being; to be in present force, activity, or effect. The noun "existence", derived from the verb "exist", is defined by Webster's International Dictionary, 2nd Edition, as follows:
"1. State of being actual; reality as opposed to appearance.
"2. a State or fact of having being; as, the existence of other worlds; b determined being; being with reference to some limiting condition; as, the existence of a fictive world; mode of being.
"3. Sentient or living being; continuance in life
"4. Continued or repeated manifestation; actual occurrence; as, the existence of a calamity or a state of war.
"5. That which exists; also, a specific being or entity."
The law "assumes the objectivity of external nature; and for the purpose of judicial investigation a thing perceived by the tribunal as existing does exist." Moorhead v. Arnold, 73 Kan. 132, 84 P. 742, 746, quoting and adopting the definition in 2 Wigmore, Ev., p. 1345. Where a grantor reserved the right to designate the location of rights of way for easements for further sewer and water lines, it was held that roving easements not located were not "existing" within the meaning of a deposit receipt given the purchaser. Culligan v. Leider, 65 Cal. App.2d 51, 149 P.2d 894, 897. In Simpson v. Boston & M.R.R., 176 Mass. 359, 57 N.E. 674, the court held that a statute abolishing the right by prescription to acquire a right of way across railroad tracks and excepting from its provisions "existing rights of way", meant rights of way which, at time of the adoption of the statute, had fully ripened into a right by prescription or otherwise and did not include alleged rights based on adverse use begun before passage of the statute, but which had not ripened into title at the time of such passage.
Finding No. 2
"(2) The disputed road has existed in its present location for many years, and it is shown on an official map made in 1941 and clearly appears in aerial photographs made in 1951 and 1958. The roadway provides access from Gulf Beach Highway to Weekly Bayou and is, and has been, used by the public *770 generally and particularly by residents of the Weekly Bayou area."
The significance of this finding is not clear. The critical findings upon which the decree is based are to the effect, as we shall see, that during federal ownership of the property the road in dispute was continuously maintained by Escambia County for a period of more than four years, commencing in 1953 and continuing at all times thereafter, and that since the federal government did not, within four years after the commencement of such county maintenance, take affirmative action to stop the work, it is deemed to have acquiesced in the establishment of the road on the theory of an implied dedication to the public under F.S. 337.31, F.S.A.; further, that "The title of the Defendant County by statute ripened and vested in 1957, and the purported renunciation or relinquishment of that title by the Resolution of December 1959 is null and void for failure of the Board of County Commissioners to follow the proper procedure for such action."
The last reference of the chancellor is to F.S. Sections 336.09-336.10, F.S.A., which relate to the discontinuance and closing by the county authorities of an "existing" public road, and to the renunciation and disclaimer by the county of any right or interest in land "acquired" for road or highway purposes. The statutes require the Board of County Commissioners to take certain steps before any "existing" road shall be closed and vacated, and before any right or interest of the county or public "in any land delineated on any recorded map or plat as a road [the road in suit is not so delineated]" shall be renounced and disclaimed. Failure to comply with these statutes was not raised as a defense and the first and only reference thereto appears in the chancellor's Finding No. 7, infra. These statutes relate to "existing" and "acquired" rights and are inapplicable to this case because the county's resolution of December 29, 1959, supra, (1) acknowledged that at that time the subject road was not public in character, and (2) declared, in effect, that any work thereafter performed thereon was not to be construed as being in aid of a presumed dedication under F.S. 337.31, F.S.A.
The proofs do not reflect and the chancellor's findings do not indicate that the road in question was in continuous use by the public from June 2, 1942, the date on which the federal government acquired "absolute and unqualified fee simple title" to the subject land. On the contrary, it was not until 1953 that the defendant county commenced sporadic maintenance thereof.
The so-called 1941 "official map", as the chancellor describes it, or "county map", as the majority describe it, is in fact a map of "Fort Barrancas, Fla. Ala." prepared by the U.S. Geological Survey. It does not purport to accurately locate or state the character  whether public or private  of the roads depicted thereon. Aerial photographs in evidence are similarly deficient. Neither the map nor the photographs are shown to be of public record in Escambia County.
The majority refer to the chancellor's finding (No. 2) that "the disputed road has existed in its present location for many years," and refer to the 1941 map and aerial photographs mentioned in said finding, thus raising an inference that the public has used the subject road uninterruptedly since 1941, with the possibility that an easement by prescription may exist. I wish to note that such would not only go beyond the chancellor's critical findings Nos. 6 and 7, hereinafter discussed, which limits the resulting decree to the theory of a presumptive dedication of the road pursuant to F.S. 337.31, F.S.A. but would also ignore finding No. 8, infra. The record does not remotely support the premise of uninterrupted use for the period necessary to create a right by prescription and such was not an issue on the trial.
On the subject of uninterrupted use, one Claude Wright was called as a witness for the defendants. He testified that in 1953 he acquired property near the Weekly Bayou community and thereafter used the road in question as a means of access to his property; *771 that it led "across what is commonly called the old Bauer Field," a landing field, which is the property now owned by plaintiffs. Witness Wright also gave uncontradicted testimony as follows:
"Q. Did you know the property, Bauer Field, prior to 1953?
"A. No, sir, I didn't know anything about it.
"Q. Was it ever fenced, to your knowledge?
"A. Well, the field is fenced, yes. There is a flying field at the openings where the road went into the property but I never did see any obstructions 
"Q. In other words, the fence came up to the road and stopped? Is that correct?
"A. Well, yes, it had been opened for the road to go through, I think, I don't know, this is just my own thought about it, this was the original entrance to the field, we will say, on the south side, but on the opposite side I never did see anybody  I never did see any obstructions either place at any time."
* * * * * *
"Q. Mr. Wright, what was the character of the fence that surrounded it when it was a naval aviation field? What kind of a fence?
"A. It was a wooden post with wire around it.
"Q. The ordinary field fence?
"A. Yes, sir.
"Q. And do I understand that there was some kind of a terminus in that fence where it came to the road or was it just removed to make an opening there?
"A. Well, I don't know, I couldn't state.
"Q. I mean was there a stab down there and a brace?
"A. No.
"Q. Just like the fence had been cut or removed?
"A. It had been cut and ditches on the side, where it had been graded."
* * * * * *
"Q. Mr. Wright, is there a continuation of this road after it comes through the aviation field?
"A. Yes, sir, it continues on for, oh, I will say, maybe two blocks and it runs into private property then, yes, sir.
"Q. In other words, it dead ends about two blocks beyond the aviation field?
"A. Somewhere around that, yes, sir."
This testimony produces the inescapable conclusion that the federal government, upon acquiring title to the subject property in 1942, caused it to be fenced and for a period of time prior to 1953 kept whatever type of roadway theretofore existed thereon closed against use by the public; that at some later date during federal ownership, when the property was no longer being used as a landing field, the fence was cut and the property subjected to the use of persons in the Weekly Bayou community as a means of ingress and egress.
Finding No. 3
"(3) Defendant Escambia County began clearing and grading the road in 1953 and continued to do so up to the present. The maintenance included filling holes and ruts and such other work as was necessary to make the road usable. Although the road was in existence prior to any action by Escambia County, the County `constructed' the road within the meaning of Section 337.31 as defined in Pasco County v. Johnson, Fla., 67 So.2d 639."
This finding comports with the facts, except that it cannot be said that the road "was in existence prior to any action by Escambia County" in the sense that any *772 established rights had theretofore become vested by deed, prescription, vacation, acquiescence or otherwise. The term "was in existence", when read in the light of the over-all findings, simply means that it had been in use as a means of travel prior to 1953, but does not state when the use commenced or that it was uninterrupted.
For the purposes of my views, it is conceded that commencing in 1953 and continuing to the commencement of this suit, the county performed a type of work on the road which, except for the fact that title was in the federal government from 1953 to a date less than four years prior to the commencement of this suit, is sufficient to raise an inference of dedication of an easement for road purposes under F.S. Section 337.31, F.S.A.; that the work meets the test stated by dictum in Pasco County v. Johnson (Fla.), 67 So.2d 639. The Pasco County case was an appeal from an order dismissing the county's complaint for a mandatory injunction against property owners who had barricaded an alleged public county road. In reversing, the Supreme Court emphasized that the complaint alleged that defendants' predecessors in title had fenced a meandering road on the property and laid out the road in suit as a new public road or as a relocation of the old public road; that they thereby recognized the right of the county to maintain the same for the use of the traveling public; that such acts constituted a dedication in fact; that the defendants having knowledge thereof were bound by it; and that the county accepted the dedication by performing the work of constructing and maintaining the road. The case is of little value here because it involved allegations of affirmative acts raising a clear inference of presumptive dedication under F.S. 337.31, F.S.A. and was concerned with a private landowner. Neither of these factors attend the case on appeal.
Finding No. 4
"(4) The Federal Government permitted and acquiesced in the construction and maintenance by the County from 1953 to 1956 when it conveyed to Finman, and it impliedly recognized the right of the County to maintain the road by such acquiescence and by the reservation in the Deed to Finman."
This finding is factually correct in that the record does not reflect that the federal government took any affirmative action to prohibit the defendant county from constructing and maintaining the road during the period from 1953 until it conveyed to Finman in 1956, plaintiffs' predecessor in title. Assuming, per argumenti, that acquiescence on the part of the federal government operates to vest some right in a trespasser upon its property  a theory to which I do not subscribe , there is no evidence whatever that notice of the work performed by the county was ever brought to the attention of the federal government. While the question is not necessary to be resolved in disposing of this appeal, I adhere to the view that the type of acquiescence required to establish a presumption of dedication under F.S. 337.31, F.S.A. must be supported by a showing that the owner had actual knowledge of work being done by the county on his property.
The proposition that the federal government by its deed to Finman recognized the right of the county to maintain the road in dispute is necessarily premised on the fact, as hereinabove discussed, that the habendum clause of the deed recites that the conveyance is made subject to "existing" easements and rights of way for roads. Since the evidence will not permit, directly or by inference, the conclusion, when tested by applicable law, that on the date of said deed there was an established public road in existence on the land, the mentioned clause had no more effect than if the deed had been made subject to the "existing leaning tower of Pisa." It is a common practice to include such words of limitation in deeds of conveyance, not for the purpose of vesting unfounded interests in persons other than the grantee, but to protect the grantor against liability if there exists, unknown *773 to the grantor, some interest in derogation of what would otherwise be the estate conveyed. It is also a familiar device by which to exclude from the conveyance known easements, the metes and bounds descriptions of which are not available to the parties to the deed.
The quitclaim deed by which the federal government divested itself of title was issued by and through the Administrator of General Services under and pursuant to the powers and authority contained in the provisions of the Federal Property and Administrative Services Act of 1949, approved June 30, 1949 (63 Stat. 377), as amended, 40 U.S.C.A. § 471 et seq., and regulations and orders promulgated thereunder. It is generally known that the disposal officers of General Services Administration seldom have available to them muniments that would disclose the condition of the government's title to land to be offered for sale and that, out of abundance of caution, it is the practice to include in the Invitation for Bids, and to announce at the auction sale, the condition that the land will be disposed of by the United States of America by a quitclaim deed and subject to all existing easements and rights of way for roads, highways, railroads, pipelines and public utilities. It is obvious that since the interest of the government in the property is conveyed by a quitclaim deed, the clause in regard to easements and rights of way is an unnecessary appendage. It cannot be surmised, however, that by the use of the clause the government implies that there is an easement or right of way affecting the government's title to the property, or that the government suspects there is one in existence. It is commendable for the government to take every precaution against the possibility that a citizen, who purchases by quitclaim deed containing a clause as contained in the deed in suit, and who, as may sometimes happen, discovers that his land is affected by an easement, may not be in position to claim that he was taken advantage of by his government. The contrast between the dealings of the federal government in making sale of the property in suit and that followed by the county in dealing with the plaintiffs is so marked as to require no comment.
Finding No. 5
"(5) The road was in existence when Finman bought the tract of land from the United States. It was clearly visible and in use, and Finman must be presumed to have purchased the property with knowledge of its actual condition. The Plaintiffs occupy no better or different position than Finman."
Except for the critical question as to whether the road was in "existence", in the sense that the county had acquired a vested right therein prior to conveyance of the tract of land from the United States to Finman, the above finding is correct in point of fact and law. The crux of the situation, according to my notion, is that while "The Plaintiffs occupy no better or different position than Finman," it is of no consequence because the title acquired by Finman was not burdened with the road in question.
Finding No. 6
"(6) The road was constructed and maintained continuously and uninterruptedly by Defendant Escambia County from 1953 for a period of more than 4 years, and such road is deemed to be dedicated to the public under Section 337.31, Florida Statutes 1959."
This finding, together with Finding No. 7, infra, constitutes the critical basis for the final decree dismissing appellants' complaint for injunctive relief and decreeing, on the defendant county's counterclaim, that said defendant "is vested with all of the right, title, easement, and appurtenances" in and to the right of way in dispute as shown by a map of survey filed in the cause. The survey shows a meandering 66-foot road right of way traversing plaintiffs' 120-acre rectangular parcel of land, which has a north-south dimension of 2645.50 feet. The east line of the easement *774 so established intersects the south boundary line of plaintiffs' property at a point 398 feet west of the southeast corner and intersects the north boundary line at a point 2068.10 feet west of the northeast corner. Thus the subject road quite effectively butchers approximately 40 acres of plaintiffs' land. The road terminates on privately owned property at a point approximately two city blocks north of plaintiff's property line.
I confess an inability to penetrate the subtle distinction attempted to be drawn between the acquisition of title to or an interest in real property perforce adverse possession under Florida Statutes, Chapter 95, F.S.A., as compared to acquisition of a road right of way perforce the statutory presumption of dedication under F.S. 337.31, F.S.A. The effect on the record owner of the land is not sweet, no matter by what name the hostile process is dubbed; and if any distinction exists, it is more apparent than real, a child of legal legerdemain and gobbledygook. While the statutory requirements by which to acquire title by adverse possession are not identical with the statutory provisions creating a presumption of dedication of a road right of way, there are overriding principles of law applicable to both, that is to say:
Where title to land is in the United States, no rights by prescription or adverse possession can be acquired under the legislation of a state. Wright v. Louisville & N.R. Co., 203 Ala. 118, 82 So. 132; Hemphill v. Moy, 31 Idaho 66, 169 P. 288; Wilkinson v. Watts, 309 Ill. 607, 141 N.E. 383; Cocke v. Spangler, 159 La. 409, 105 So. 413; Hamilton v. Badgett, 293 Mo. 324, 240 S.W. 214; Bode v. Rollwitz, 60 Mont. 481, 199 P. 688; Hanks v. Lee, 57 Utah 537, 195 P. 302; Utah Copper Co. v. Eckman, 47 Utah 165, 152 P. 178; Schmitz v. Klee, 103 Wash. 9, 173 P. 1026; Lemieux v. Agate Land Co., 193 Wis. 462, 214 N.W. 454, cert. den. 275 U.S. 523, 48 S.Ct. 22, 72 L.Ed. 405; Porter v. Carstensen, 40 Wyo. 156, 274 P. 1072; U.S. v. Stewart, C.C.A.Cal., 121 F.2d 705, revd. 316 U.S. 354, 62 S.Ct. 1154, 86 L.Ed. 1529; Baldrich v. Barbour, C.C.A. Puerto Rico, 90 F.2d 867, motion den. 91 F.2d 650; U.S. v. Otley, D.C.Or., 34 F. Supp. 182, mod., C.C.A., 127 F.2d 988; U.S. v. State of California, Cal., 332 U.S. 19, 67 S.Ct. 1658, 91 L.Ed. 1889, op. supp. 332 U.S. 804, 68 S.Ct. 20, 92 L.Ed. 382, reh. den. 332 U.S. 787, 68 S.Ct. 37, 92 L.Ed. 370, pet. den. 334 U.S. 855, 68 S.Ct. 1517, 92 L.Ed. 1776; Engel v. U.S., C.A.Mich., 258 F.2d 50; U.S. v. Oglesby, D.C.Ark., 163 F. Supp. 203.
As said in Manwell v. Levee Dist. No. 1, Pub.Hous.Admin. (D.C. 1958), 165 F. Supp. 439:
"It is elementary that title by prescription cannot be acquired to property of the United States. Statutes of Limitations do not run against the sovereign. Laches on the part of officers of a government agency do not give rise to an estoppel against the sovereign. The roots of this doctrine find nurture in sound public policy to such an extent that even equity is of no avail in seeking to divest the Government of its interest in the property which is the subject matter of the case at bar."
The same rule applies to property of the state, not only as to the sovereign right of original dominion, but also as to every secondary or derivative right of property. Bagley v. Wallace, 16 Serg. & R. (Pa.) 245. It also applies to lands of a county, town, municipal corporation, or other political subdivision or agency of the state which are held for public purposes rather than owned in a private capacity. See Pearce v. Cone, 147 Fla. 165, 2 So.2d 360; Waterman v. Smith (Fla. 1957), 94 So.2d 186.
In direct point with the case on review is Kennedy v. Townsley, 16 Ala. 239, holding that even though title to land situated in a territory ceded to the United States by treaty could have been acquired by prescription as against the ceding sovereign, if the prescription is not complete when the territory is ceded it does not continue to run against the United States.
*775 In Palm Beach County v. South Fla. Conservancy Dist., 126 Fla. 170, 170 So. 630, the county, relying on F.S. 337.31, F.S.A., sought to maintain a duly established public road over lands incorporated by law in a drainage project. In dealing with the statute, the Florida Supreme Court said:
"The purpose of the 1935 act was to operate as a statute of repose with respect to the rights of way of roads or portions thereof that had theretofore been constructed by road building authorities of the several counties and of the state itself under circumstances of irregularity in the acquirement of title to the rights of way wherever existing roads had been constructed and were being used. Whatever may be its validity, applicability, or effect as applied to the lands of private owners appropriated and put into use by the road building authorities absent the legal acquisition of an easement or title for the purpose, it is certain that such statute was not intended to divest public bodies, such as drainage districts, of any existing right they might have in rights of way and drainage works of such drainage districts acquired and held for drainage purposes in accordance with law." (Emphasis supplied)
The majority hold that the federal government "could have prevented the County from reconstructing the road in 1953 and from thereafter maintaining it as a road for use of the general public," and that since it "did not avail itself of the rights which it possessed to prevent further use of the road by the public, it must be assumed that such use of the land owned by the government was consistent not only with its wishes, but with its best interest." This is indeed an interesting and novel concept of law, for which no precedent is available. If it was the duty of the government in order to protect its interest by taking affirmative action to prevent the county from "reconstructing the road in 1953 and from thereafter maintaining it as a road for use of the general public," the reason for the rules whereby rights in property owned by the sovereign are established by adverse use, or by acquiescence of its officers or employees, or by legislation of the state, vanishes into thin air and the rules become unnecessary and innocuous.
I find no connection between the position of the majority herein and the case of Brookfield v. Rock Island Improvement Co., 205 Ark. 573, 169 S.W.2d 662, 147 A.L.R. 451, from which an excerpt is quoted, or that of Shumway v. State, 63 Ariz. 400, 163 P.2d 274, also cited. Shumway, in construing an Arizona statute, simply held that a lien for taxes is prior to the lien of mortgages held by persons other than the State. The Brookfield case simply held that one who by mistake has paid taxes on another's land does not enjoy, in respect to the right to be reimbursed therefor by the true owner, the state's immunity from the running of the statute of limitations. Whatever these cases have to do with the real property rights involved by the case on review is beyond my understanding. The majority say, and I agree, that "where the sovereign has a right to plead the statute of limitations in defense of an action against it, such right inures to the benefit of its grantee or successor in interest and may be asserted with the same effect as could the sovereign had it continued as the principal party in interest." But I suggest that no statute of limitations is involved in the case at bar, which is classified as involving the subject of repose. How does it result, in view of the above rule, with which I agree, that although the right inures to the benefit of the sovereign's grantee or successor in interest to assert a statute of limitations, with the same effect as the sovereign might have done had it continued as the principal party in interest, the principle of immunity does not extend to the sovereign's grantee of real property, as involved by this case? The majority say that "Since the real parties plaintiff in this case are individuals and not the federal government, they are not entitled to assert sovereign immunity against the operation and effect of the statute on *776 which the chancellor relied in rendering his decree in this case." That answer does not "send" me. If there is any choice, based on principle, between the right of the sovereign's successor in interest to assert the sovereign's immunity to a statute of limitations and the right to assert the sovereign's immunity against the operation of a statute such as F.S. 337.31, F.S.A., it would seem that the latter should be favored.
Finding No. 7
"(7) The title of the Defendant County by statute ripened and vested in 1957, and the purported renunciation or relinquishment of that title by the Resolution of December 1959 is null and void for failure of the Board of County Commissioners to follow the proper procedure for such action. See Sections 336.09 and 336.10 Florida Statutes 1959. Plaintiffs cannot claim any estoppel arises out of the Resolution because they have not acted in reliance thereon, and in fact they claim the Resolution is ineffectual for other reasons."
This finding and its affirmance projects a novel rule of law to the effect, in essence, that regardless of whether the county, in causing work to be done on the road in question, intended to set in motion the factors by which to assert a constructive easement under F.S. 337.31, F.S.A., and despite its formal declaration to the contrary, title to the road in question nevertheless became vested in the county in 1957 by force of the statute, and the purported renunciation or relinquishment of that title by the resolution of December 29, 1959, supra, is null and void for failure of the county to follow the procedure defined by F.S. Sections 336.09 and 336.10, F.S.A., which have been discussed. Not only was no such issue developed but the finding rejects, as having no legal implication, the assurances given to the plaintiffs and their predecessor in title by the county and its officials to the clear purpose and effect that the county did not claim any vested interest in plaintiffs' lands and that any work done on the road in question was not to operate in derogation of plaintiffs' title.
Without implying that public funds may be expended for private purposes, I am aware of the fact that many Boards of County Commissioners, or individual members acting with tacit if not formal approval, from time to time cause county employees and equipment to be used in maintenance and repair work on private roads for the convenience and accommodation of the owners of the property or of those having permissive use of such private roads, with no intention whatever that any adverse rights be acquired against the owner. It is unthinkable that under such circumstances the road becomes a public road within the purview of the statute. I am of the opinion that from the moment the County Commission, as in this case, adopts a resolution which can only be fairly interpreted as renouncing any implication that the work done on a road is not to be deemed in contemplation of the establishment of an easement for public road purposes, every principle of estoppel cries out that the county should not be heard to assert the contrary. Where a private party desires to abandon a permissive use and claim adversely to the owner, he must acquaint the owner with such intention, and I can think of no reason why the rule should not apply to a public body claiming under F.S. 337.31, F.S.A.
Finding No. 8
"(8) The authorities cited and argued by Plaintiffs deal with easements acquired by prescription. It is true the evidence does not establish adverse user by the traveling public for more than 20 years, but the Defendant County is claiming title by dedication and not an easement by prescription. Each presents entirely different issues. The presumed dedication under 337.31 is not necessarily based upon adverse user in the sense that such use be hostile, and there is thus no reason why the Statute *777 could not apply against the Federal Government; however, it is not necessary to decide what affect the statute might have in a case directly involving the United States. In this case the government conveyed its title expressly subject to such claim."
This finding eliminates any question of the existence of an easement by prescription and unequivocally holds that F.S. 337.31, F.S.A. may be invoked against the federal government. It erroneously construes the deed out of the federal government as a recognition of the claim of the county, and necessarily implies that the government's agents and officials may, by acquiescing in the acts of a trespasser on government property, suffer rights to be acquired adverse to the government's title. Of course this construction is available only on the theory that the statute applies against the federal government. In my opinion, both conclusions are erroneous and in direct conflict with previous decisions of the Supreme Court of Florida, as herein cited, as well as in conflict with the federal law.
Aside from the harsh results that would flow from a liberal construction of F.S. 337.31, F.S.A., permitting the property of the citizen to be taken by a presumption of dedication arising over the brief span of four years non-residence, the statute must be strictly construed in order to preserve the constitutional prohibition against taking private property for public use without just compensation (Constitution of Florida, Dec. of Rights, Sec. 12, F.S.A.) and the award of just compensation by a jury of twelve.
Summarizing my conclusions:
(1) The deed from the United States to Maurice Finman, dated December 13, 1956, did not operate to preclude the grantee or his successors in interest (the plaintiffs) from asserting the non-existence, as of the date of said deed, of the alleged vested easement of right of way for public road purposes.
(2) The work done upon the subject road and the permissive use accorded the public during the period the United States Government held title to the fee did not operate to vest any rights in the defendants or in the public, and may not be taken into account in calculating the four-year period comprehended by F.S. 337.31, F.S.A.
(3) The defendants failed to establish any right, title, easement or estate in the subject land and the plaintiffs are entitled to the relief prayed.
(4) The decree appealed should be reversed with directions to enter a decree for the plaintiffs in accordance herewith.
I therefore dissent.
NOTES
[1] Pasco County v. Johnson et ux., (Fla. 1953) 67 So.2d 639.
[2] F.S. § 337.31, F.S.A.
[3] 55 ALR 2d 554.
[4] Sparks v. Pierce, 115 U.S. 408, 6 S.Ct. 102, 29 L.Ed. 428.
[5] Downing v. Bird, (Fla. 1958) 100 So.2d 57.
[6] Pasco County v. Johnson, see footnote 1; Palm Beach County et al. v. South Florida Conservancy District, 126 Fla. 170, 170 So. 630.
[7] 40 Words and Phrases "Statute of Limitation" p. 95.
[8] 53 C.J.S. Limitations of Actions § 18b, p. 954.
[9] Brookfield v. Rock Island Improvement Co., 205 Ark. 573, 169 S.W.2d 662, 147 A.L.R. 451; Shumway v. State, 63 Ariz. 400, 163 P.2d 274.
[10] City of Miami et al. v. Jansik, (Fla. 1956) 89 So.2d 644.
[11] Bosell v. Rannestad, 226 Minn. 413, 33 N.W.2d 40; Moakley v. Los Angeles Pac. Ry. Co., 139 Cal. App. 421, 34 P.2d 218; Brightwell v. International Great Northern R. Co. (Tex.Civ.App.) 41 S.W.2d 319.
[12] Kotick v. Durrant, 143 Fla. 386, 196 So. 802.
[13] Palm Beach County et al. v. South Florida Conservancy District. See footnote 6.