ERVIN, Chief Justice
(dissenting):
In 1926, Respondent Railroad entered into a written agreement with the City of Miami which gave the City a thirty-year easement over a fifty-foot strip of property running from Northeast 6th to 9th Streets, immediately adjacent to the east boundary of the existing road or street now known as Biscayne Boulevard (U.S. Highway No. 1). The easement was given for the purpose of enabling the City to widen the existing roadway. The record facts before the trial court reveal the 1926 easement between Respondent Railroad and the City was never placed of public record.
In 1927 the City, in accord with the terms of the easement, caused the fifty-foot strip to be paved and thereafter maintained it for several years as Biscayne Boulevard. In 1946, Petitioner, the State Road Department (now referred to as the Department of Transportation), pursuant to F.S. section 335.04, F.S.A. (Ch. 20218, Laws 1941), the municipal connecting links act, assumed the maintenance of the boulevard and at that time completely reworked and repaved the roadway strip with asphalt to a depth of two inches. Petitioner, by letter in 1947, specifically informed officials of the Respondent as record owner of the strip of the fact of the resurfacing project undertaken by Petitioner. Undisputed evidence submitted by Petitioner reveals that Biscayne Boulevard, including the portion here in dispute, has been continuously and uninterruptedly maintained by the Florida State Road Department as an important section of U.S. Highway No. 1, from 1946 to date.
In 1956 the easement of 1926 expired but was purported to be renewed by an extension agreement entered into in 1957 between the City and a trustee appointed on behalf of the Railroad. This agreement, which also was not recorded, provided for an extension of the easement indefinitely, subject to termination by either party on six months’ notice. It is to be noted these easement transactions were between the City of Miami and the Railroad and that the State Road Department was not a party to these easement agreements.
On May 27, 1966, the Respondent notified the City of the termination of the easement, effective December 1, 1966, and advised the Department of the termination. On February 7, 1967, the Department filed a map with the Clerk of the Circuit Court of Dade County showing the location of the fifty-foot strip and stating, inter alia, that the strip had been vested in the Department pursuant to F.S. section 337.31, F.S.A. Thereafter, on April 10, 1967, suit in inverse condemnation was filed by Respondent against the City and the Department for the purpose of regaining possession of the granted parcel or to have it condemned. The Department was joined because it claimed right of ownership and possession in the fifty-foot strip.
The trial court entered final summary judgment in favor of Respondent and on appeal the District Court affirmed in a two-to-one decision, finding no reversible error in the conclusions and rationale set forth in the trial court’s decree.
Basically, the trial court reasoned: (1) F.S. section 337.31, F.S.A. (and presumably its predecessors) was not intended by the Legislature to apply to a situation such as is involved here where a municipality *589 constructed a street pursuant to an express grant of easement for street construction purposes from the owner; and that (2) an attempt to apply the statute to the instant situation would generate serious constitutional consequences.
It seems to me the decision below (230 So.2d 726) in affirming summary judgment in favor of Respondent Railroad, on the facts presented, has misconstrued the effect of F.S. section 337.31, F.S.A., and its predecessors, and has arrived at a decision in direct conflict with prior pronouncements interpreting the operative scope and intendment of this statutory provision and its predecessors. State Road Department v. Lewis, Fla.1964, 170 So.2d 817; Lovey v. Escambia County, Fla.App.1962, 141 So.2d 761.
Section 337.31, provides:
“(1) Whenever any road constructed by any of the several counties or incorporated municipalities or by the department shall have been maintained, kept in repair or worked continuously and uninterruptedly for a period of four years by any county, municipality, or by the department, either separately or jointly, such road shall be deemed to be dedicated to the public to the extent in width which has been actually worked for the period aforesaid, whether the same has ever been formally established as a public highway or not. Such dedication shall be conclusively presumed to vest in the particular county in which the road is located, if it be a county road, or in the particular municipality, if it be a municipal street or road, or in the state, if it be a road in the state highway system or state park system, all right, title, easement and appurtenances therein and thereto, whether there be any record of conveyance, dedication, or appropriation to the public use or not.”
Subsection (2) of Section 337.31 provides that the filing of a map meeting certain requirements therein specified shall constitute “prima facie evidence of the ownership of such lands either by the state or by the county or municipality as the case may be.”
The Department’s failure to file the required map until February, 1967, does not preclude it from asserting a statutory dedication prior to such time. Prior to the filing of such a map the Department could not, of course, avail itself of the statutorily prescribed rule of prima facie evidence of ownership of the roadway strip in question. However, prior to such filing, the Department could nevertheless establish a statutory dedication by actually providing the satisfaction of the conditions set forth in Section 337.31(1) or the applicable predecessor to said statute. See Downing v. Bird, Fla.1958, 100 So.2d 57.
The use of state funds for the reconstruction and maintenance of the roadway strip in question commenced according to the evidence submitted by Petitioner some time in the year 1946. The obvious purpose behind the Department’s decision in 1946 to expend state funds to reconstruct and maintain Biscayne Boulevard, including the disputed roadway strip in question, was to fulfill the requirements of the legislative act pertaining to municipal connecting link roads, Chapter 20218, Laws 1941 (now F.S. § 335.04, F.S.A.). This act in its original form provided:
“Section 1. It is hereby expressly recognized and declared by the Legislature of the State of Florida that city and town streets and roads, or portions thereof, viaducts and bridges, that constitute the route of connection between or extension of state roads in the State Highway System, and referred to and named in and by this Act as municipal connecting link roads, have served, do now serve and will in the future serve a State purpose, and are for the general benefit of the State; that it is a proper and legitimate State function and expense to designate such municipal connecting link roads and to undertake and provide the cost of maintenance, repair, construction and reconstruction of same.
*590 * * * * * *
“Section 4. That the State Road Department whenever it hereafter constructs or reconstructs any state road which enters or passes through any city or town, shall construct or reconstruct the municipal connecting link of such road to conform to the same type of construction used in such road * * * ” (Emphasis supplied.)
It is common knowledge that Biscayne Boulevard, running north-south through Miami, Florida, is an important municipal link of U.S. Highway No. 1, if not the most important.
In light of its obligation and duty under the municipal connecting link act as aforesaid, it seems paradoxical to conclude, as does the trial court below, that the Department could not avail itself of the predecessors of F.S. section 337.31, F.S.A., at the time the Department undertook the 1946 reconstruction project of the roadway right of way strip in question and thereafter in 1947 notified Respondent of such project. Chapter 23935, Laws 1947, as did Chapter 20781, Laws 1941, and Chapter 17307, Laws 1935, provided:
“ * * * Whenever any road or portion thereof, heretofore constructed by any of the several counties of this state or by the state road department of Florida, shall have been maintained, kept in repair or worked continuously and uninterruptedly for a period of four years by any such county or by said department, or by either or both, such road shall be deemed to be dedicated to the public to the extent in width which has been actually maintained, kept in repair and worked for the period aforesaid * * (Emphasis supplied.)
Respondent contended — -and strangely the trial court so concluded — that the predecessors of F.S. section 337.31, F.S.A., and particularly the 1947 enactment, since the Department in 1946 assumed control and maintenance of the Boulevard and reconstructed the fifty-foot strip, were not applicable to the present situation since said strip of roadway was originally constructed by the City and not by the County or Department. This is a very strained interpretation of these early enactments which completely ignores the plain fact that the Department, pursuant to the requirement of the State’s municipal connecting link act, reconstructed the roadway strip in 1946 as a part of U.S. Highway No. 1 and thereafter maintained it, without complaint or objection from Respondent for nearly two decades, even though the latter was put on notice of the reconstruction project undertaken by the Department.
The obligation of the Department under the municipal links act should not be passed over lightly in attributing a logical meaning to the early predecessors of F.S. section 337.31, F.S.A. Furthermore, even though it was the City and not the County or Department which originally constructed the strip of roadway or street here in question, the decision in Lovey v. Escambia County, supra, strongly suggests that a reconstruction project such as was undertaken by the Department in 1946 is sufficient to come within the terms “construction” and “maintenance” so as to commence the running of the statutory four-year period. In Lovey, the Court sustained a reconstruction project undertaken by the county as sufficient to commence the running of the limitation period under Section 337.31. In the present case, the Department, not through any exercised discretion but rather through an obligation imposed on it under the municipal links act, undertook its 1946 reconstruction project.
It seems to me the type of “reconstruction” sustained in Lovey would apply with greater force to the “reconstruction” on the part of the Department here involved.
Even if the 1947 predecessor to Section 337.31 could logically be construed as not applicable to the present situation on the rationale it was the City and not the Department which originally constructed the roadway strip in question, it seems quite *591 clear that such reasoning could not prevail under the 1951 predecessor (Chapter 26547, Laws 1951) to Section 337.31.
The 1951 enactment, like present F.S. Section 337.31, F.S.A., incorporates roads or streets previously or subsequently constructed by municipalities as well as by the counties or by the Department. Thus, even though the roadway in question was originally constructed by the City, the maintenance by the Department for nearly two decades commencing in 1946 and continuing uninterruptedly thereafter without complaint or objection from Respondent until it finally notified the Department of its claim. on May 27, 1966, would more than satisfy the requirements of the 1951 act so as to give rise to a conclusive presumption of public dedication of the roadway as a state road. Moreover, the existence of the one year savings clause in the 1951 act obviates the constitutional uncertainty speculated in by the trial court. In this respect, see Bridgehead Land Co. v. Hale, Fla.1941, 145 Fla. 389, 199 So. 361. Furthermore, during the running of the four-year period necessary to give rise to the presumption of dedication, the Respondent was the record owner of the strip of land involving the roadway and the mere fact Respondent was not in possession of the land due to the easement in favor of the City could in no way obviate or diminish Respondent’s obligation to direct the Department’s attention to the expiration clause in the unrecorded easement arrangement with the City and to Respondent’s reversionary claim to the strip.
Strange indeed is the fact that in 1957, subsequent to the 1956 expiration of the unrecorded thirty-year easement between the Railroad and the City, and some ten years after the Department assumed control and maintenance of the Boulevard, the trustee of the Railroad even then did not bring to the attention of the Department that the Railroad claimed the fifty-foot highway strip, but instead undertook to enter into an indefinite extension of the original easement with the City, subject to termination upon six months’ notice. The City had no authority in 1957 to bind the Department (which obviously the trustee of the Railroad must have known) through a collateral agreement with the Railroad’s trustee to extend the easement covering an important item of right of way on a main arterial highway of the state and thereby waive the Department’s claim to this right of way under the four-year dedication statute. By the very nature of the matter, it is inconceivable that the Department would have permitted the City to act in its stead in 1957 in the manner it did concerning so important and costly a right of way strip of such magnitude in Biscayne Boulevard (U.S. Highway No. 1), practically in the heart of the City of Miami.
It is inconceivable also that the Department with its knowledge or consent would have countenanced the acceptance of so unsubstantial a right of way easement agreement for any portion of U.S. Highway No. 1 and particularly one in a section so important as Biscayne Boulevard in Miami, by making it subject to termination by the private grantor at any time on six months’ notice.
Having lost all control of the roadway or boulevard since it passed absolutely to the Department under the municipal connecting links act — the Department having taken it over in 1946 as a part of U.S. Highway No. 1 — the City had no authority in 1957 to revive the easement on behalf of the Department by entering into any further extension of it with the Railroad’s trustee. This the trustee unquestionably knew. The trustee in 1957 also knew what everyone else was presumed to know: that Biscayne Boulevard for many years had been incorporated in U.S. Highway No. 1 and was under the control of the Department and not the City. It follows the Railroad’s status in 1956 on the expiration of the thirty-year easement was no different than any of the many thousands of other record owners of lands, parts of which are used as portions of the rights of way of state roads. Such record owners, after the lapse of four uninterrupted years of continued maintenance by the Depart *592 ment of the roadway on such rights of way and who thereafter do not make seasonable claims therefor, are presumed to have dedicated their interests in such rights of way to the public, not having any agreement from the Department to the contrary. This has been the established interpretation of the four-year dedication statute under pertinent decisions of this Court. The Railroad, as a record owner, made no claim upon the Department until May 27, 1966. The decisions below are in direct conflict to pertinent holdings of this Court and are aberrational exceptions to the general rules applying to all other record owners.
The Railroad, or its trustee, similarly as thousands of other record owners of state road rights of way parcels, is presumed to know that rights of way of state roads are deemed dedicated under the State’s long-enacted and well-known four-year maintenance statute for public highway purposes unless claim therefor is timely made to the State Road Department. Had this been done, the Department long ago would have been put on proper actual notice of Respondent’s claimed reversionary ownership interest and could have purchased or condemned the land at then prevailing land values in order to extinguish Respondent’s interest. Having not been put on such notice, the Department continued to expend state funds for the maintenance of the roadway, only to learn nearly twenty years after Biscayne Boulevard’s reconstruction and maintenance by it that Respondent’s claimed reversionary rights had finally matured insofar as the City of Miami was concerned. Certainly had Respondent granted an easement to another party other than the City, logic and reason would not allow it to escape the operation of the dedication statute upon the theory it had no standing or opportunity to assert its ownership interest during the running of the statute.
Nor should Respondent be excluded from the operation of the statute because the easement granted by it to the City was expressly for road construction purposes. Although this fact might logically work an estoppel against the City so far as concerns whatever rights it might seek to assert under principles of statutory dedication (see City of Miami v. Florida East Coast Railway Co., Fla.App., 231 So.2d 10), similar equitable principles simply do not apply as against the Department, which was not privy to or bound by the expired easement agreement entered into by the City or the latter’s extension thereof. Here, we are dealing with a statute of repose which operates virtually as a statute of limitations insofar as state highways are concerned. Lovey v. Escambia County, supra. We are not dealing with a statute of succession merely intended to vest the current road authority maintaining and repairing the road for the statutory period with only whatever rights the authority originally constructing same might have possessed. Nor is the application of statutory dedication dependent upon adverse and hostile use as defined in the law of prescription and adverse possession. F.S. section 337.-31, F.S.A., and its predecessors were designed to place in repose any irregularities underlying the ownership of the rights of way to state roads by converting the public interest in such right of way to a permanent ownership upon the occurrence of the conditions specified in the statute. Lovey v. Escambia County, supra. Such conditions were adequately and fully complied with by the Department under the facts of this case and the special exception to the operation of said statues agreed to by the lower courts in this case constitutes an unjustified aberration from the intended application of these statutes as always heretofore previously construed.
In accordance with, and for the reasons set forth in the foregoing discussion, and additionally for the reasons outlined by Chief Judge Pearson in his dissenting opinion below, I believe a writ of certiora-ri should issue to review upon oral argument the final summary judgment sustained in favor of Respondent.